## Maguire v. DelConte

*Samuel A. Litzenberger,* for plaintiffs.

*David B. Fitzgerald,* for defendants.

SMILLIE, J., December 3, 1971.—The appeal herein is from an order dated September 20, 1971, dismissing a petition to open a judgment.

On February 26, 1967, a car driven by Vincent DelConte, who was driving allegedly under the influence of narcotics or alcohol and at a speed greatly in excess of that prescribed by law, traversed three lanes of traffic into his wrong lane and crashed into the side of a car driven by Francis J. Maguire, Sr., in which Francis J. Maguire, Jr. and Mary B. Maguire were passengers, on Route 309 in Montgomery Township, Montgomery County, Pa. Liability is not now nor ever has been denied on the part of Vincent DelConte and no petition to open the judgment arising from the accident has been filed on his behalf.

The Maguires, on August 2, 1967, commenced an action in trespass by summons, served upon Vincent DelConte and his parents, Mildred and Matthew DelConte, on August 7, 1967. On November 9, 1967, a complaint in trespass was filed. The complaint, alleging that Vincent DelConte was at the time of the accident acting within the scope of his employment on the business of his parents, Mildred and Matthew DelConte, was served upon the DelContes by delivery to the residence of the DelContes. The sheriff's return is as follows:

"Complaint in Trespass

"SERVED AND MADE KNOWN to Mildred Del-Conte the within named defendant by handing a true and attested copy of the within writ to Joseph DelConte an adult member of the family of said defendant, who stated that his relationship to said defendant is that of Son, on November 13, 1967 at 1:35 o'clock P.M., Eastern Standard Time, at 36 Betsy Lane, Ambler in the County of Montgomery, State of Pennsylvania, the dwelling house of said defendant.

"So answers,

"s/Joseph Pergine, Deputy Sheriff

"s/ Merrill A. Bucher, Sheriff."

The same return is attested to for Matthew and Vincent DelConte.

The complaint was endorsed with notice to plead within 20 days of service.

Rule 1009 of the Pennsylvania Rules of Civil Procedure, made applicable to trespass actions by Rule 1041, states:

"(b) When the defendant is an individual, the writ of summons, or the complaint if the action is commenced by complaint, may be served

". . .

"(2) by handing a copy

"(i) At the residence of the defendant to an adult member of the family with which he resides; but if no adult member of the family is found, then to an adult person in charge of such residence."

Here, the sheriff's return indicates that service was made by handing a copy thereof to Joseph, the adult son of defendants. The return is clearly proper on its face. The son was never deposed and did not testify, but Mildred DelConte, the mother, as she has throughout, did all the testifying.

As to the conclusiveness of a sheriff's return, the

Supreme Court of Pennsylvania said in Hollinger v. Hollinger, 416 Pa. 473 (1965):

"Our courts have long adhered to the rule that, in the absence of fraud, the return of service of a sheriff, which is full and complete on its face, is conclusive and immune from attack by extrinsic evidence: . . . Our experience with this rule has indicated that it is generally salutory and worthy of preservation; *from this rule we do not depart.* . . " (Italics supplied).

"However, both logic and common sense restrict the conclusive nature of a sheriff's return *only to facts stated in the return of which the sheriff presumptively has personal knowledge,* such as *when* and *where* the writ was served; . . . However, the immutability of a return should not extend (a) *to facts stated in the return of which the sheriff cannot be expected to have personal knowledge and which are based upon information obtained through hearsay or statements made by third persons* or (b) *to conclusions based upon facts known to the sheriff only through statements made by others.*"

The precise age of Joseph is a fact which is obviously not within the personal knowledge of the sheriff. The statement in the return that Joseph was an adult came either from inquiry or from the sheriff's personal observation of the appearance and demeanor of Joseph. No proof of Joseph's age as "17" at the time of service was offered. The issue of service was never legally contested, but only casually mentioned in a pretrial memorandum in November, 1969, as:

"9. *Special Comments:* Service of the Complaint, Sur Trespass, was effected on a minor."

If the service of the complaint was actually defective, which has not been proved except by an uncorroborated statement by Mrs. DelConte, a new

service of the complaint could have cured the defect. The DelContes' delay in taking any action to strike the complaint has benefitted the DelContes. It is their delay and theirs alone which has created another situation which could prevent plaintiffs from obtaining witnesses to establish the agency claim if the complaint were stricken. As of the present moment, DelContes' counsel, Mr. Fitzgerald, has not moved to strike the complaint, although he has represented the DelContes since June 1970. That delay, too, is unaccounted for and unexplained.

Mildred DelConte further alleges, *now*, that *at that time*, in November of 1967, she knew it was legally bad service and that she so told her lawyer, Lyle Houpt. Even if the facts were as Mrs. DelConte states them, the alleged defect should not be fatal to the judgment now because no timely objection was made and defendants agreed to the entry of judgment. There is no allegation of fraud in the return, nor is there any indication that defendants were injured by the delivery of the complaint to Joseph. In fact, it clearly appears from the deposition of Mrs. DelConte *that Joseph delivered the complaint to her.* Plaintiffs were lulled into the belief that service was proper. If, as the Supreme Court says in Minetola v. Samacicio, 399 Pa. 351 (1960), that equity is the main consideration in such a situation, the equities are overwhelmingly in favor of the Maguires, plaintiffs.

In Minetola v. Samacicio, supra, the court refused to open a default judgment where defendant failed to establish a valid defense on the merits, and the court stated that the fact that service was made at a place other than the residence of defendant and delivered to one who cannot conceivably be defendant's son, was merely an equitable consideration, *not sufficient in itself* to overturn the judgment.

No answer was filed and no appearance entered by any counsel for defendants. A praecipe to enter judgment by default against all parties for want of an appearance was filed on December 5, 1967, 22 days after service of the complaint.

At some point between the service of the complaint and December 1, 1967, H. Lyle Houpt, who had represented the DelContes in other prior litigation, was retained by Mildred and Matthew DelConte and his appearance entered December 8, 1967.

On June 6, 1969, a praecipe for pretrial conference, signed by counsel of record for all parties, was filed. At the pretrial conference held before Judge Honeyman on November 10, 1969, counsel for the DelContes filed a pretrial memorandum denying liability and, *for the first time*, alleged faulty service of the complaint. It was not pressed and the case was listed for trial, limited to the issue of damages, on January 16, 1970.

At the trial before Judge Groshens on January 16, 1970, with H. Lyle Houpt present and representing the DelContes, verdicts totalling $20,000 were entered by a jury against the DelContes

H. Lyle Houpt, on behalf of the DelContes, then entered into an agreement whereby defendants would pay $35 per week from February 1, 1970, until June 16, 1970, at which time the balance of $10,000 would be due. It was further agreed that if a default should occur in the weekly payments, the total of $20,000 would become immediately due and payable. The agreement, signed by both counsel, was filed with the court.

Mrs. DelConte admits that in November 1969, Houpt discussed a settlement of the case with her for $22,000, payable in weekly installments. She also stated that Mr. Houpt questioned her concerning her home as security for the payment of the judgment. She told him she would have to see her son about that. Mr. Houpt

confirms the conversation which Mrs. DelConte discussed in November 1969, regarding the judgment and the home as security. He said he again spoke to Mrs. DelConte about the judgment and the agreement to pay on January 16, 1970. Houpt also sent Mrs. DelConte a copy of the agreement. In Mr. Houpt's file there is a copy of a letter dated January 16, 1970, sent to Mrs. DelConte, as follows:

"I am enclosing a Xerox copy of the settlement in the entitled matter.

"I was unable to arrange twenty-five ($25.00) dollar per week payments; but was able to effect a compromise at thirty-five ($35.00) dollars per week.

"I am reasonably certain the Ten thousand ($10,000) Dollars can be procured thru a private source. Meanwhile, I will advance the weekly payments for you in accordance with our understanding.

"Kindly let me know whether you will be able to procure the liquidation of this indebtedness or whether I must do so for you."

The DelContes do not deny *receipt of the above letter.*

The letter, it will be noted, shows that Mr. Houpt had been negotiating with Mildred DelConte about the judgment because he calls attention to the fact that he was unable to comply with *Mildred DelConte's request* to pay only $25 a week and was compelled to agree to the $35 payment. He also says that he would advance the weekly payments out of his own pocket "in accordance with our understanding." Nothing could be clearer than that Mr. Houpt was in conversation with Mrs. DelConte about the entire transaction throughout. His closing request to Mrs. DelConte to let him know if she wanted him to obtain funds to liquidate the payment is also revealing.

H. Lyle Houpt, for the DelContes, personally made

the weekly payments in accordance with the agreement until May 1970. These payments, totalling $595, were made from counsel's own funds. The reason for the payment from his own funds was because he knew the DelContes did not have the immediate funds to make the payments and obviously he was waiting for Mrs. DelConte to let him know if she or he were to obtain the funds to satisfy the judgment. Mrs. DelConte was content to let Mr. Houpt pay. She did not disturb the arrangement while he was paying.

The DelContes at no time advanced funds nor did they pay counsel for his services.

When the weekly payments ceased, execution was issued in May 1970. A stay of execution was sought and obtained on June 12, 1970. On June 23, 1970, which was two and one-half years after entry of the judgment by default, a petition to open the judgment was filed by Mildred and Matthew DelConte's new counsel, David B. Fitzgerald.

The Maguires, plaintiffs, filed an answer to the petition to open, alleging new matter. It was endorsed with notice to plead. Mr. Fitzgerald, Mrs. DelConte's present counsel, acknowledged receipt of the new matter, *but filed no responsive pleading to it.* Failure to answer the new matter is unaccounted for to the present day.

The purpose of a default judgment is to speed a cause of action along, thereby preventing dilatory and procrastinating defendants from impeding plaintiff in the establishment of his claim.

There are three requisites to open a judgment: (1) A valid defense; (2) prompt action to open; (3) a plausible reason for the default: Wheel v. Park Building, 412 Pa. 545 (1963).

None of the three requisites is present in the case at bar. In fact, each is not present. There is no valid

defense; over two years elapsed before petitioning *to* open; and no reasonable or credible excuse is offered for the failure to promptly move to open.

Courts do not approve foreclosing the opportunity of defendants to be heard on the merits. We carefully scrutinize the equities involved in each case in which a petition to open a judgment by default is filed. However, we cannot deny to an injured, financially suffering plaintiff the right to have his righteous claim adjudicated and satisfied. There must be an equitable balance of rights between the injured and wrongdoer; especially when ample time, notice, negotiations and agreements to compromise the amount due have occurred. Victims of an auto accident also have a right to see a final determination of their damages so that they do not lose their home for failure to meet *their* obligations through no fault of theirs.

Mildred and Matthew DelConte allege that their default was caused by the neglect or failure of their former counsel, and allege *for the first time* in *four years,* that they have a defense to the action. They claim to have had no knowledge of the default judgment of December 5, 1967, until informed of it by a third party in May 1970.

Mrs. DelConte has been the spokesman for defendants throughout these proceedings and was the one who retained H. Lyle Houpt. Mr. DelConte has allowed his wife to handle everything, as has the 27-year-old Vincent.

Mrs. DelConte's testimony may be summarized as follows:

In late November, 1967, she gave the complaint, which she *read* and *understood,* to Mr. Houpt. She knew about the accident involving her son which occurred in the early part of 1967. Sometime before service of the complaint, she expelled from her home

an investigator who was interviewing her son with respect to the case, when she overheard the conversation but claims she cannot *now recall* the substance of that conversation.

She stated at one point that the investigator's visit was the first she was aware of legal process, but she later repudiated that statement. Her testimony, on cross-examination, is in contradiction to her testimony on direct. It clearly reveals that she knew of the legal papers served them in August 1967. She first says she read them; then she did not because they made her angry; and, finally, that she read four of the paragraphs. In fact, a reading of the testimony of Mrs. DelConte shows her as evasive, contradicting and purposefully lacking in memory on certain key inquiries. She never explained why she delayed from August until November 1967, before consulting an attorney or why she delayed bringing the complaint to an attorney, especially when she knew about the suit and its serious purport.

Mrs. DelConte stated that she mentioned *the alleged lack of agency* to Mr. Houpt at the time she delivered the complaint to him. She inquired only once about the case, though she saw her lawyer, Mr. Houpt, frequently from November 1967, through November 1969, on many matters, involving her son in criminal court and with the police. Mr. Houpt had handled other matters for her, including a business matter in 1964. In fact, she says she "used him for everything." Present counsel, Mr. Fitzgerald, also represented Vincent DelConte in at least one of his recent encounters with the courts in June 1969.

Undoubtedly, the other troubles Mrs. DelConte was having with Vincent made her doubly anxious to settle the ominous character of his automobile accident outside of the court and as quickly and free from

publicity as possible. She said in her depositions that her home was liened for bail on several occasions for Vincent and the accident occurred at the height of her efforts to protect Vincent.

Mr. Houpt, whose deposition was taken on October 13, 1970, stated that before the entry of his appearance on December 8, 1967, he knew about the default judgment against all three defendants and told Mrs. DelConte about it. He said he told her of the necessity to file a petition to open the judgment if she desired to have the case settled consistently with her claim that no agency relationship existed between Vincent DelConte and his parents at the time in question. Mr. Houpt also stated that from his independent investigation he had uncovered information which made such defense of extremely doubtful validity, but that he nevertheless requested continuously that Mrs. DelConte sign a petition to open judgment. *He spoke to her every few weeks until early 1969.* Mr. Houpt further testified that he informed Mrs. DelConte that the case was coming up for pretrial conference and that she had instructed him to handle the matter as well as he could under the circumstances.

While it seems in the particular instance Mr. Houpt acted in the most effective manner possible, if it is assumed that there was any neglect by him, defendants themselves cannot avoid responsibility for the unconscionable delay.

Mrs. DelConte retained Mr. Houpt; she clothed him with the indicia of authority to act or not to act on her behalf. Mrs. DelConte, except for one inquiry shortly after she had turned the matter over to him, never sought to find out the status of the case. She does not intimate that it was the custom in her previous relationship with Houpt for her to receive legal service free of charge. That alone might have flagged her at least

to inquire or act. Moreover, Mrs. DelConte consulted Mr. Houpt on other matters between December 1967, and November 1969, though she claims that she knew another attorney was representing her son in court matters in early 1969 because of some dissatisfaction with Mr. Houpt's services.

On the other hand, counsel for plaintiffs had a right to rely, as he did, on Mr. Houpt's action. Under the Act of April 15, 1834, P. L. 333, sec. 70, 17 PS §1631, an attorney has been given the power to commence, prosecute and defend all actions in which he has been retained. The law has been interpreted to give an attorney extensive power to bind his client by his conduct and admissions. Moreover, Pennsylvania Rule of Civil Procedure 1002 states:

"Any act other than verfication of the pleading required or authorized by this chapter to be done by a party may be done by his attorney."

Here, the failure of Mr. Houpt to file a petition to open judgment was authorized by Mrs. DelConte by her failure to act when he requested she do so. If there was any neglect by Mr. Houpt, which we cannot find, the DelContes acquiesced in that neglect for two and one-half years.

Any doubt as to the approval or acquiescence of the DelContes in the action of Mr. Houpt is resolved against the DelContes by a review of Mrs. DelConte's testimony concerning two conversations she had with Mr. Houpt in November 1969, two years after he had been retained.

Mrs. DelConte admits that Mr. Houpt called her twice in November, 1969: once to question her concerning ownership of the car which her son was driving at the time of the accident; and once to discuss settlement of the Maguires' claim for $22,000, payable in weekly installments. It is clear that she knew all

about the proposed settlement and agreed to it. Mrs. DelConte claims that she was shocked by the discussion of the case but admits that she did not inquire as to why a matter, she thought had long been settled, was still under discussion. Though "shocked," according to her, she admits she did absolutely nothing about the case from November 1969, to June 1970. Since Mr. Fitzgerald was representing Vincent with Mrs. DelConte's help in June 1969, it would seem beyond belief that she would not discuss with him the Maguire suit, judgment and settlement.

Mrs. DelConte is a woman who reads, writes, speaks and understands the English language and is, in the knowledge of the writer of the opinion, an astute, worldly woman upon whose acumen in law and business the family relied. She has had long and varied experience with the law and courts. She understood the action against her as related by the complaint.

There are no legal technicalities involved in the wording of an accident complaint so difficult in their nature that a layman, even one totally unknowledgeable in law, could not understand fully their meaning. Common sense would cause a less mentally alert person, moderately concerned about his affairs, to realize that the case was not closed and that at least inquiry should be made.

It is not reasonable to ask a court to condone two and one-half years of total disregard of a law suit by vague allegations of not knowing what had occurred and seizing on the opportune, if unfortunate, disbarment of their lawyer as a belated excuse to avoid a long over-due debt.

Mr. Houpt was disbarred and succeeding counsel is using that disbarment to permit Mrs. DelConte to escape the consequences of her original agreement. She now knows, or her present counsel knows, that

witnesses are probably not available to substantiate the original claim of plaintiffs, who, throughout, are the innocent victims of the DelContes' conduct.

No matter what Mr. Houpt did to merit disbarment, and we sat on the three-man court which heard his case, and also the full court which disbarred him, none of his conduct applied to his behavior in the DelConte case. The loose allegations, outside of the record, in the petition for opening a judgment about Lyle Houpt, do not change the patent obvious facts and clear inferences that the DelContes are using Houpt's misfortune to extricate themselves from an obligation which, when incurred, was a relief to them at the time of multiple other more serious difficulties involving their son, Vincent.

The time which has elapsed between the filing of the present petition and the admitted knowledge of defendants alone is eight months. No reason is given for *that* delay. Even if we assumed that grounds to open the judgment existed in November 1969, they cannot now be said to exist. Eight months does not represent a reasonably prompt effort to rectify what is declared to be an inequitable situation. Only purposeful neglect or what is more probable, hope that Houpt's personal troubles could be relied upon to keep them from paying what was incurred by the communication of November 1969, and by lack of concern for their own affairs or an effort to impede plaintiffs in the establishment of their claim, can explain the dilatory practices on the part of the DelContes.

The opening of a judgment is not a matter of right, but one of grace. In Texas and Block House Fish and Game Club v. Bonnell Run Hunting and Fishing Corporation, 388 Pa. 198 (1957), a complaint in equity was filed and served upon appellants. The complaint was endorsed with notice to plead within 20 days of service.

No appearance was entered and 23 days after service, judgment by default was taken. Five months and 10 days after the entry of judgment, appellants petitioned to open the judgment. Appellants alleged failure to plead was due solely to the neglect of their former counsel, a neglect not attributable to them, that the petition to open was reasonably prompt on presentation, that they possessed a meritorious defense, and that appellee would not be prejudiced. In holding that the trial court did not abuse its discretion in refusing to open the judgment, the Supreme Court of Pennsylvania stated, at pages 202-03:

"The learned court below held there was no oversight or mistake on the part of appellants' counsel in failing to plead to the complaint. The record amply supports this conclusion. Appellants' counsel had been retained 6 months prior to the time the complaint was served for the purpose of handling matters involved in the boundary line dispute. A secretary for one of appellants testified that he took the complaint to counsel and they talked of the necessity for filing an answer within 20 days. When the secretary was asked whether he had computed when the 20 days would expire he responded: 'No, I didn't, I left it to Mr. Szybist's discretion with the warning that he take care of it; he said he would, and if he found he needed extra time he would try to get it.' The secretary further testified that it was not until March 26, 1955—almost 5 months later —that he again personally visited the attorney's office and at that time he was informed the appellants had bargained away their rights in this matter.

". . .

"Even after becoming aware of the entry of judgment—May 6, 1955—appellants took no further formal action until June 2, 1955—27 days later—when they filed the petition to open judgment. The court

below was justified in concluding that no satisfactory explanation had been given for this delay."

It is essentially an equitable proceeding, governed by equitable principles, designed to overcome the harsh results which mere compliance with the letter of the law may create. See Kraynick v. Hertz, 443 Pa. 105 (1971); Richard v. A. F. of L. Medical Service Plan of Philadelphia, 415 Pa. 561 (1964); Carrozza v. Girard Chevrolet Co., 200 Pa. Superior Ct. 502 (1963).

The determination to grant or refuse a petition to open rests in the sound discretion of the trial court, and its decision will not be overturned unless there is a clear and manifest abuse of discretion: Kraynick v. Hertz, supra; Richard v. A. F. of L. Medical Service Plan of Philadelphia, supra.

While a mistake or oversight of counsel, causing prejudice to defendant's rights is a valid basis upon which to open a judgment where application is made within a reasonable time and no injury or prejudice results to plaintiff (Texas and Block House Fish and Game Club v. Bonnell Run Hunting and Fishing Corporation, supra; Borjes v. Wich, 171 Pa. Superior Ct. 505 (1952)), a mistake or oversight acquiesced in over an unreasonable period of time precludes equitable consideration. In Baraonfski v. Malone, 371 Pa. 479 (1952), the Supreme Court stated, at pages 482-83:

"Moreover, and apart from all other considerations, defendant *lost any possible right* to equitable relief because of his delay in seeking it. It is true that a court has the *power* to open a judgment by default (as distinguished from a judgment adversely rendered) even after the expiration of the term in which it was entered: (citations omitted). But the application for that purpose must be made without unreasonable delay or else the relief sought is barred by laches. (citations omitted). Here the petition to open the judg-

ment was filed almost ten months after entry of the judgment although defendant was represented during several months of that period by counsel who, as previously stated, discussed and apparently agreed upon a settlement of the case, and plaintiff was lulled into issuing two successive writs of fieri facias and expending the costs of condemnation and advertisement of defendant's realty for sale." (Italics supplied.)

The Northumberland lower court case of Joseph S. Shultz v. Ellen or Ella Zoretski, et al., 28 Northum. Leg. J. 110 (1956), cited by counsel for defendants, is clearly distinguishable from the instant case.

In the Northumberland County case, defendant was served with a scire facias sur mechanic's lien on December 10, 1954, and on that day, he consulted and retained counsel. The following week he called upon counsel and asked if the proper papers had been filed. He was then told that the matter was taken care of. On February 2, 1955, he learned for the first time that a judgment by default had been entered against him. He again contacted counsel and was informed that nothing was to be done as the papers had been filed a long time ago. The petitioner then contacted another attorney who accepted the case and from March until May 1955, attempted to effect a settlement. The petitioner then retained new counsel in June and a petition to open judgment was prepared and a rule was granted thereon, four months after defendant became aware of the judgment. In finding that defendant had promptly filed his petition and given a reasonable excuse for his delay, the court emphasized defendant's constant diligent efforts to secure professional assistance and his constant inquiries into the status of the case.

We are of the opinion that defendants were not acting in good faith, that they have deliberately delayed in asserting a defense and in filing a petition

to open judgment. Had defendants been sincere in wanting to defend the action, they would have promptly consulted Mr. Houpt or another attorney in November 1969. They were happy to have Mr. Houpt pay their weekly debt and to keep cosily quiet as to his request to "let him know" if they wanted him to obtain the money to satisfy the debt.

Furthermore, plaintiff will be irreparably prejudiced if we were to open the judgment now, almost five years since the accident and the judgment. Some of their witnesses are no longer available, a fact which is not denied by the DelContes. More particularly, the Maguires, plaintiffs, would now be barred from successfully proving their claim because of the lapse of time and lost witnesses if the service of the complaint is now declared defective and stricken.

The only result to be accomplished by the opening of the judgment would be indulgence of the gross dilatory tactics of defendants and a cruel denial of plaintiffs' rights arising from an undefensible accident. Defendants have not shown good faith or any believable excuse for delay. For these reasons, the petition to open judgment is refused.